IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GERALD PATE                                                    PETITIONER


v.                                    NO.  4:05CV00491 GH-JFF


LARRY NORRIS, Director,
Arkansas Department of Correction                        RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge George Howard, Jr.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

Before the Court is the Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   For the reasons that follow, the Magistrate Judge undersigned recommends that the petition be dismissed with prejudice.

On November 11, 1997, the Faulkner County, Arkansas, Circuit Court issued a search warrant for "[t]he residence of 89 Gap View Road, Conway, Arkansas, which is a light colored mobile home . . . . "  In his affidavit in support of the application for the search warrant, Jeff Anderson, an investigator with the Conway Regional Drug Task

Force, stated as follows:

That the facts establishing probable cause and grounds for issuance of Search Warrant are as follows:

I am Investigator Jeff Anderson and I am a commissioned Police Officer of the Conway Police Department, Conway, Arkansas, and have been since December 1992. As of March 17, 1997, I have been assigned to the Conway Regional Drug Task Force. I have been a member of the Conway Police Department SWAT Team for two years and have participated in numerous narcotic Search Warrants. As of July, 1997, I have been assigned to the Drug Enforcement Administration as a Task Force Officer, and have been to a Clandestine Methamphetamine Laboratory Certification School.

FACT 1: On October 23, 1997, Faulkner County Detective Jim Wooley contacted the Conway Regional Drug Task Force with information of a female by the name of Terr[y] Lynn Stephenson, aka Terri Lynn Bradberry, who is associated with a Gerald Pate who resides at 89 Gap View Road, Conway, Arkansas. According to individuals at John Deere in Damascus, Arkansas, Stephenson had come into the business and bought all the ether they had, which was sixteen (16) cans of starting fluid. A photograph of Stephenson was shown to the employees at John Deere in Damascus, Arkansas, and they positively identified Stephenson as the person who made the purchase of the starting fluid. Stephenson was driving a blue Chevrolet Camaro, displaying license plate number 964 ATW, which returns to Gerald Pate.

FACT 2: On or about October 25, 1997, a white female, later identified as Terr[y] Lynn Stephenson, entered the Duncan Outdoor, Conway, Arkansas, and purchased twenty-four (24) cans of starting fluid.

FACT 3: On November 8, 1997, Terr[y] Lynn Stephenson entered the Duncan Outdoor, Conway, Arkansas, and purchased thirty-six (36) cans of starting fluid. Stephenson made a comment to an employee that she likes the John Deere starting fluid because it is 80% ether. On that day, Terr[y] Stephenson was driving a gray Buick Skylark, displaying license plate number 283 BMY, which returns to Terr[y] Lynn Stephenson. A photograph of Stephenson was showed to the employees of Duncan Outdoor and they positively identified her as the person purchasing the starting fluid.

FACT 4: On November 11, 1997, Investigator Travis Thorn and I went to the residence of 89 Gap View Road, Conway, Arkansas, and could smell a very strong odor of chemicals. At the residence was the above

mentioned vehicles.

FACT 5: Gerald Pate was convicted of first degree murder in 1959, and served twenty-six years. Pate also has priors to theft and burglary and also car theft.

FACT 6: Terr[y] Lynn Stephenson has prior for the Uniform Controlled Substance Act in Conway, Arkansas and Perry County. Also has prior for theft of property.

FACT 7: Due to my experience and training, these chemicals are used to manufacture methamphetamines.

Based on the facts above, I respectfully request that a Search Warrant be issued for the residence described above to include any and all out-buildings, vehicles, and surrounding curtilage. It has been my experience that suspects frequently conceal evidence in vehicles and out-buildings.

On November 11, 1997, at about 3:00 p.m., police officers executed the search warrant.  Officers discovered Petitioner and Terry Lynn Stephenson inside the mobile home. Suppression Hearing Transcript, p. 163. Officers found the following items inside the mobile home: a bottle containing ephedrine, a bottle containing niacinamide, a zip lock bag containing white powder, a zip lock bag containing filter papers with residue, a small piece of plastic containing red residue, a black bag containing drug paraphernalia, two brown bottles containing seeds, a semi-automatic pistol, a rifle, a wallet containing $1,185.00, and a book labeled *Police Call Codes and Frequencies*. Tr. 165-168. In Petitioner's blue Chevrolet Camaro, which was parked outside his residence, officers found a briefcase containing electronic equipment and recipes for manufacturing methamphetamine. Tr. 170-171. In a pickup truck parked at the residence, Investigator Jeff Anderson found a trash bag containing twelve empty John Deere starting fluid cans. Stephenson Trial Transcript, p. 293.  Police officers also searched a storage shed next to the mobile home.  Upon entering the shed, Mike

Gibbs, the SWAT team leader for the Conway Police Department, smelled a  strong odor of chemicals and notified Investigator Anderson. Suppression Hearing Transcript, pp. 173, 202.  Investigator Anderson then entered the shed and smelled a strong odor of ether.  Tr. 174.  Officers discovered the following items in the shed: a bottle of drain opener, clear plastic tubing, two sets of safety goggles, filter masks, a 150-pound anhydrous ammonia tank, a one gallon glass  jar containing a clear liquid with sediment on the bottom, and a one gallon glass jar containing three-quarters of a gallon of clear liquid. Tr. 184.

On November 11, 1997, Petitioner was arrested. On November 12, 1997, he was charged by felony information filed in Faulkner County Circuit Court with manufacturing methamphetamine, possession of methamphetamine, possession of drug paraphernalia, and felon in possession of a firearm.  On November 12, 1997, Terry Lynn Stephenson also was charged by felony information with manufacturing methamphetamine, possession of methamphetamine, and possession of drug paraphernalia. Counsel, on behalf of Petitioner and Terry Lynn Stephenson, subsequently filed a motion to suppress the evidence seized during the search. Counsel alleged, *inter alia*, that the search warrant was issued in contravention of the Fourth Amendment and that Facts Numbers 1, 2, 3, and 6 in Anderson's affidavit in support of the application for the search warrant were false.  Counsel also alleged that Fact Number 4 "was an impossibility for Travis Thorn to go to the residence and smell anything whatsoever" and that if Thorn "actually went to the residence, then he violated by going to the residence as an uninvited guest."  Counsel alleged that Fact Number

7 was misleading because it used the plural "chemicals."

On February 16, 1999, the circuit court held a suppression hearing.   Petitioner testified on his behalf at the hearing that he had resided at the 89 Gap View Road location for about eight years and that "all the stuff, everything in the house" was his. Suppression Hearing Transcript, pp. 154-155. On direct examination by the State, Investigator Jeff Anderson testified concerning the preparation of the search warrant and the execution of the warrant. Tr. 157-178. On cross-examination by defense counsel, Anderson testified that the printout he used to put the information regarding Petitioner's prior offenses in his affidavit did not indicate whether or not Petitioner was convicted of car theft or theft of property. Tr. 182.  Upon further questioning by defense counsel, Anderson testified about how he developed the information that was contained in Fact Number 1 in his affidavit. Anderson testified that he received a letter on the letterhead of Rural Equipment Company in Damascus, Arkansas, that described the purchaser of the starting fluid as "[a] young woman, approximately twenty-five to thirty years old, brown hair, weight approximately 130 pounds, height approximately 5'8" tall." Tr. 185-186.  He testified that "this alone is not" the basis of Fact Number 1 in his witness affidavit. Tr. 186.  Anderson then stated that according to his rap sheet Ms. Stephenson was born in 1963, which would have made her about thirty-four years of age in 1997 (compared to twenty-five to thirty, as described in the letter); and that her arrest disposition report listed her as five-foot-four (compared to 5'8," as described in the letter). Tr. 187. He also testified that he ran the tag number, tried to cross reference addresses, and "did a little surveillance." Tr. 186, 188. He stated that the tag did not come back to Terry Lynn Stephenson, but that it came back to Gerald Pate.  Tr. 188.

Anderson testified that further investigation revealed that Terry Lynn Stephenson was the person in Fact Number 1. Tr. 188-189.  He stated: "The truth of the matter be known, it's that a photograph was shown to a confidential informant who picked Ms. Stephenson out. There was one photograph shown." Tr. 189.

On cross-examination by defense counsel, Anderson also testified that in the early afternoon of November 11, 1997, he and Travis Thorn, an investigator with the Conway Regional Drug Task Force, went to a field on the "other side" of the residence at 89 Gap View Road and that he (Anderson) smelled "a strong odor of ether." Tr. 191-192.  He stated that they had permission to go on the property. Tr. 191.  Anderson further testified that a gallon glass jar with a lid on it was found in the search. Tr. 192-193.  He stated that if he remembered correctly, the lid was not screwed down tightly but was "on there kind of loose." Tr. 193.

Officer Mike Gibbs testified at the hearing on behalf of the State.  He stated that when he entered the shed at 89 Gap View Road, he smelled an odor through his gas mask. Tr. 202.   Investigator Anderson testified on cross-examination by defense counsel that Officer Gibbs told him that there was a strong chemical odor in the shed. Tr. 208.   On redirect by the State, Anderson stated he was wearing a full-face APR mask that had filters to filter out ether. Tr. 210. After the hearing, the circuit court denied the motion to suppress.

On June 21, 1999, Terry Lynn Stephenson was convicted of manufacturing methamphetamine, possession of methamphetamine, and possession of drug paraphernalia after a bench trial in Faulkner County Circuit Court.  At the trial, Travis

Thorn testified that on November 11, 1999, he and Investigator Anderson drove right beside the bob-wire fence beside the storage building near Petitioner's residence and smelled a very strong chemical odor. Stephenson Trial Transcript, p. 261. He testified that the odor smelled like "the makings of a meth lab." Tr. 261. Investigator Jeff Anderson testified that on November 11, 1997, he and Investigator Thorn went to property adjacent to Petitioner's residence and smelled a very strong odor of chemicals "from right around" the storage shed next to the residence. Tr. 272, 275.  Anderson testified that a one gallon glass jar containing a clear liquid and white sediment and a one gallon glass jar containing a clear liquid were found in the shed. Tr. 277.  Anderson also testified that during the search, he found a trash bag containing twelve empty John Deere starting fluid cans in the back of a pickup parked at Petitioner's residence. Tr. 293.  Gary Dallas, the chief chemist at the State Crime Lab, testified that testing of the clear liquid and white sediment in the gallon jar revealed that the liquid was ether and that the white sediment was methamphetamine.  Tr. 349-350. Dallas also testified that he found an anhydrous ammonia tank in the storage shed, that the tank appeared to be full or almost full, and that anhydrous ammonia is used in the manufacturing of methamphetamine if the Nazi method is used. Tr. 346-348.  Dallas also testified that niacinamide, which was found in Petitioner's mobile home, is used as a cutting agent for methamphetamine. Tr. 357.  He testified that testing of the residue on the coffee filters in the plastic bag found in Petitioner's mobile home revealed that the residue was methamphetamine. Tr. 359.

In his written decision, the trial judge found, *inter alia*, that there was "ample

evidence" based on the testimony of Gary Dallas "that there were chemicals there that essentially was crystal methamphetamine in process." Tr. 455. The trial judge further found that "[a] major step had been taken in the [methamphetamine] manufacturing process into a substance which had somebody gone out the next day and bought lithium batteries and the other material could have been turned into crystal methamphetamine." Tr. 455.  The Arkansas Court of Appeals affirmed Stephenson's convictions. Stephenson v. State, 71 Ark. App. 254, 29 S.W.3d 744 (2000). The Court rejected Stephenson's argument that the trial court erred in denying her motion to suppress, finding that probable cause to issue the warrant was shown by Investigator Anderson's statements that Stephenson purchased an unusual amount of starter fluid, that she stated a preference for a brand with a high ether content, and that the smell of ether emanated from her residence. Id., 71 Ark. App. at 258, 29 S.W.3d at 747.

On March 9, 2000, Petitioner entered a conditional plea of *nolo contendere* in circuit court to a reduced charge of attempted manufacture of methamphetamine, possession of methamphetamine, possession of drug paraphernalia, and felon in possession of a firearm.  Pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, Petitioner conditioned his plea on the outcome of appellate review of the circuit court's denial of his motion to suppress. At the plea hearing, the prosecutor stated, *inter alia*, that methamphetamine and a pistol were found in Petitioner's bedroom at his residence and that a methamphetamine lab was found in the shed near the residence. Plea Hearing Transcript, p. 8-10.  Petitioner stated that he was convinced that the facts recited by the prosecutor would be sufficient for him to be

convicted. Tr. 12.  The circuit court sentenced Petitioner to ten years' imprisonment on each conviction, the sentences to run concurrently.

Petitioner appealed the circuit court's denial of his motion to suppress pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure. For reversal, he contended that the trial court erred in denying his motion to suppress because the search warrant was not supported by probable cause.  In support of this contention, he argued, *inter alia*, that Investigator Anderson's testimony at the suppression hearing that a photograph was shown to a confidential informant who picked Ms. Stephenson out was in direct conflict with the facts set forth in Fact Number 1 of the affidavit, which states that the photograph was shown to employees. He argued, therefore, that the affidavit was not only misleading but did not provide any information about the informant used to identify Ms. Stephenson.   In adjudicating Petitioner's claim, the Arkansas Court of Appeals first found that "[t]ying the female purchaser to appellant's car may well be enough to support her identification as Terry-Lynn Stephenson in Fact Number 1." Pate v. State, 2001 Ark. App. LEXIS 416 at * 5 (Ark. App. May 23, 2001) (unpublished). The Court found that even if it were to determine that it was necessary to exclude the information included in Fact Number 1, the Court would still find the search warrant was supported by probable cause. Id. The Court of Appeals found that Petitioner "does not specifically challenge Fact Numbers 2 and 3" and that even if the Court "were to discard the identification of Ms. Stephenson in Fact Number 1, under the

second prong of the <u>Franks</u>[1] test the affidavit's remaining content would be sufficient to establish probable cause." <u>Id</u>.

On July 19, 2001, Petitioner filed a timely petition for post-conviction relief in circuit court pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, alleging, *inter alia*, that counsel was ineffective for failing to subpoena Gary Dallas to the suppression hearing.  In an amended petition, he raised, *inter alia*, these additional grounds for relief.

1.      Counsel was ineffective for failing to call Michael Hill as a witness at the suppression hearing;

2.      Counsel was ineffective for failing to introduce at the suppression hearing a National Weather Bureau Report of November 11, 1997, showing that on that date in Conway, Arkansas, the wind was blowing at 7 miles per hour straight out of the north;

3.      Counsel was ineffective for failing to (a) obtain performance test reports from the company which manufactured the APR gas mask that Investigator Anderson was wearing at the time of the search and (b) offer into evidence at the suppression hearing performance test data which would have shown that ethyl ether could not have been smelled through Anderson's

_____

[1] Under <u>Franks v. Delaware</u>, 438 U.S. 154, 155-156 (1978), "a search warrant is void, and the fruits of a search are inadmissible, if the defendant establishes by a preponderance of the evidence that (1) a witness in the warrant proceedings made a false statement knowingly or intentionally, or with reckless disregard for the truth, and (2) with the false statement set aside, the remaining evidence is insufficient to support probable cause." <u>United States v. Barr</u>, 32 F.3d 1320, 1322 (8th Cir. 1994). "Probable cause exists when, given the totality of the circumstances, the reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." <u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000).

APR gas mask;

4.  Counsel was ineffective for failing to interview and subpoena to the suppression hearing the Conway, Arkansas, police dispatcher and the dispatch tapes made on November 11, 1997;

5.  Counsel was ineffective for failing to interview and subpoena Mr. Day to the suppression hearing;

6.  Counsel was ineffective for failing to interview and subpoena to the suppression hearing numerous other witnesses;

7.  Counsel was ineffective for failing to offer evidence at the suppression hearing that the State's alleged fax evidence was really a Xerox copy;

8.  Counsel was ineffective for failing to obtain and have analyzed a handwriting sample of Jeff Hawkins and introduce into evidence at the suppression hearing the list of chemicals;

9.  Counsel was ineffective for (a) failing to ask for a continuance and file a motion to disclose the confidential informant and (b) failing to file a motion to suppress all the evidence due to a Rule 13.1(b) violation by Investigator Anderson; and

10. "Counsel was ineffective when he failed to motion the trial court for dismissal of the charges with an absolute bar to future prosecution for the State's failure to bring [Petitioner] to trial within the twelve (12) month Statute of Limitations as provided in Arkansas Rules of Criminal Procedure Rule 28.1(c), Article 2, section 10 of the State Constitution, and the 6th and 14th Amendments of the U.S. Constitution."

On December 7, 2001, the circuit court scheduled an evidentiary hearing on Petitioner's Rule 37 petition for January 22, 2002. On December 17, 2001, Petitioner filed a motion for appointment of counsel. On January 11, 2002, he filed a renewed motion for appointment of counsel. In support of the motion, he stated that numerous witnesses and other physical evidence would need to be presented to prove his claims,

that "it will be critical that such witnesses as listed in Pate's Rule 37 Petition be subpoenaed to Court for the purpose of giving their testimony," and that "evidence such as the National Weather Report and Police Dispatcher tapes will likewise need to be subpoenaed."  He alleged he was indigent and incarcerated and could not contact the witnesses and subpoena them to the hearing unless he was aided by counsel. On January 22, 2002, the circuit court held an evidentiary hearing on Petitioner's Rule 37 petition. The record does not reflect that Petitioner, prior to the hearing, filed a separate motion requesting that the circuit court subpoena particular witnesses and evidence for the hearing or that he provided a witness or evidence list to the circuit court.  At the beginning of the hearing, Petitioner stated that he filed motions for appointment of counsel because he thought he needed witnesses and documentary evidence that needed to be subpoenaed, but that he now wanted "to stand on [his] . . . Rule 37 Petition . . . and maybe proffer a statement of evidence." Rule 37 Hearing Transcript, p. 142.  In response, the circuit court stated: "Well, I'll let you testify. Now as far as your motion for appointment of counsel, the Courts have ruled that a Rule 37 [petition] is in the nature of a civil proceeding, and you are not entitled to appointed counsel for that. You may proceed in your own right or you may hire counsel, but the Court is not required to appoint counsel for you. Okay?" Tr. 142-143.  Petitioner replied, "Okay." Tr. 143.  Petitioner then testified or argued, *inter alia*, that (1) the information contained in Facts 1, 2, 3, and 4 in Investigator Anderson's affidavit was remote hearsay, (2) counsel refused to attack Facts 1,2, and 3 even though Petitioner laid everything out for them and gave them all the information, (3) although Anderson stated in Fact 4 of

his affidavit that he and Travis Thorn drove by Petitioner's residence and smelled chemicals, it would have been impossible for them to have smelled anything west of Petitioner's residence because "there is a national weather report for that day and particular time that shows that the wind was out of the north [at] seven miles per hour," (4) "[a] neighbor who lived across the street will testify" that he knew that Investigator Anderson and Investigator Thorn were lying when they stated to him that they smelled ether because there was a cold wind was blowing out of the north on November 11, 1997, (5) the State Crime Lab supervisor stated that there was no evaporation and therefore no odor from the glass jars with lids on them and it would have been impossible for Anderson, who had on an APR mask that filtered ether, to have smelled ether, and (6) defense counsel refused to present the weather reports, dispatch sheets, and other evidence. Tr. 145-148.

At the conclusion of the State's cross-examination of Petitioner, the State asked Petitioner why Mr. Hill was not present at the hearing. Tr. 156. Petitioner stated that Mr. Hill was not present because Petitioner had no access to finding out addresses and getting subpoenas because he was incarcerated. Tr. 157. The Court then asked Petitioner whether he had anything else to offer. Tr. 157. Petitioner replied: "Not without the assistance of counsel and  - - from the position that I was in, indigent, locked up in a penitentiary, there's no way that I could even find out the addresses or who to send to to get documentation." Tr. 157. Petitioner did not call any other witnesses or present any other evidence.

After the hearing, the circuit court denied Petitioner's Rule 37 petition, finding, *inter alia*, that "the Court is unable to determine from the evidence presented through

the testimony of Mr. Pate that any prejudice resulted sufficient to warrant granting of

the Petition as a result of the actions of counsel." Petitioner appealed from the circuit

court's order denying him Rule 37 relief.  For reversal, he argued that:

1. Counsel was ineffective for failing to interview and subpoena numerous witnesses to testify at the suppression hearing, including Gary Dallas, Michael Hill, Mr. Day, the police dispatcher, and other persons;

2. Counsel was ineffective for failing to introduce other evidence at the suppression hearing, including the National Weather Bureau report for November 11, 1997, performance test reports from the company that manufactured the APR mask that Investigator Anderson wore on the day of the search, and police dispatch tapes;

3. Counsel was ineffective for failing to move at the suppression hearing to suppress all the evidence gained pursuant to the affidavit and search warrant because "Officer Anderson violated Rule 13.1(b) [of] the Arkansas Rules of Criminal Procedure by failing to disclose that it was the confidential informant who identified Terr[y] Lynn Stephenson as the person who bought the starting fluid at John Deere and Duncan Outdoors";

4. The circuit court erred in refusing to hear Petitioner's claim that his counsel was ineffective for not properly challenging the issuance of the search warrant because it had already been tried on appeal;

5. Counsel was ineffective for failing to obtain a ruling on the motion to dismiss for lack of a speedy trial before Petitioner entered his plea; and

6. The circuit court erred in not appointing counsel to assist and represent Petitioner at the Rule 37 hearing and on appeal therefrom.

The Arkansas Supreme Court found that Petitioner "cannot prevail on his

allegations of ineffective assistance of counsel at the suppression hearing because he

failed to produce factual support for his Rule 37 petition." Pate v. State, 2004 Ark.

LEXIS 408 at * 4 (Ark. Sup. Ct. June 24, 2004) (unpublished). The Court found that "[a]lthough appellant filed a lengthy Rule 37 petition listing twenty-two witnesses and identifying specific evidence he alleges his attorney should have presented at the suppression hearing, he did not attach any evidence to his Rule 37 petition." Id. The Supreme Court found that at the Rule 37 hearing Petitioner failed to present any witness other than himself, did not introduce any evidence, and "stood on his petition." Id. With respect to Petitioner's argument that counsel was ineffective in failing to obtain a ruling on a motion to dismiss on speedy trial grounds, the Supreme Court found that Petitioner's motion to dismiss on speedy trial grounds lacked merit and that counsel could not be ineffective for failing to obtain a ruling on a motion that had no merit. Id. at * 5.  Finally, the Supreme Court held that the circuit court did not err in denying Petitioner the appointment of Rule 37 counsel. Id. Accordingly, the Supreme Court affirmed the circuit court's order denying Petitioner Rule 37 relief.

On March 21, 2005, Petitioner filed his § 2254 petition in this Court attacking his Arkansas convictions. In examining Petitioner's petition and brief in support thereof, it was unclear precisely what claims Petitioner was attempting to raise. By an order entered on October 19, 2005, the Court directed Petitioner to file an amended habeas petition separately stating and numbering each claim he wished to raise. The Court informed him that any claim not separately stated would not be considered. On December 9, 2006, Petitioner filed an amended habeas petition raising the following grounds for relief:

1.      Counsel was ineffective for failing to:

(a) challenge at the suppression hearing Facts 1-3 contained in Investigator Anderson's affidavit in support of the application for the search warrant; and

(b) challenge on direct appeal Facts 1-3 contained in Investigator Anderson's affidavit in support of the application for the search warrant;

2.   Counsel was ineffective for failing to interview or call Gary Dallas, the State Crime Lab chief chemist, to testify at the suppression hearing on Petitioner's behalf to:

(a) rebut Investigator Anderson's statement in Fact 4 of his affidavit in support of the application for the search warrant that on November 11, 1997, he and Travis Thorn went to Petitioner's residence and could smell a very strong odor of chemicals; and

(b) support actual innocence[2];

3.   Counsel was ineffective for failing to call Michael Hill to testify on Petitioner's behalf at the suppression hearing and failing to investigate or interview Mr. Hill, who would have rebutted Investigator Anderson's testimony "regarding his alleged smelling of starter fluid in a field to the west of the residence, and shown [that] Fact 4 was another reckless disregard for the truth"[3];

4.   Counsel was ineffective for failing to introduce at the suppression hearing "a National Weather Bureau Report" for November 11, 1997, showing that at 89 Gap View Road in Conway, Arkansas, the wind was blowing out of the north at 7 miles per hour, which would have shown that Investigator Anderson's statement "in Fact 4 and his testimony that he and [Investigator] Thorn drove by [Petitioner's] house in a field to

---

[2]   Petitioner alleges that Gary Dallas would have testified, *inter alia*, that as long as the gallon jar of ether was sealed, "especially in a jar with a lid and seal in that condition, it could have been there for months," that "if the container was open, it would evaporate in just a few hours," and that "none of the necessary chemicals were found."

[3]   Petitioner alleges that Mr. Hill would have testified that there was a cold wind blowing straight out of the north on November 11, 1997, and that "the officer could not have smelled anything to the South."

the West and smelled a strong odor of chemicals (ether) was deliberately false";

5.      Counsel was ineffective for failing to obtain performance test reports from the manufacturer of the APR gas mask Investigator Anderson was wearing when he entered the shed and offer into evidence at the suppression hearing performance test data which would have shown ethyl ether could not have been smelled through Anderson's APR gas mask;

6.      Counsel was ineffective for failing to interview and subpoena to the suppression hearing the Conway, Arkansas, police dispatcher and the dispatch tapes of November 11, 1997, which "would have proven that Anderson and Thorn did not drive by [Petitioner's] residence in a field to the West between 11:00 a.m. and 12:00 p.m. as Anderson testified to and averred in Fact 4 of the affidavit for a search warrant";

7.      Counsel was ineffective for failing to interview and subpoena Mr. Day to the suppression hearing[4];

8.      Counsel was ineffective for failing to interview and subpoena to the suppression hearing numerous other witnesses, who would have testified, *inter alia*, that they had not smelled the odor of chemicals around Petitioner's residence and shed in October and November of 1997;

9.      Counsel was ineffective for failing to offer evidence at the suppression hearing that the State's alleged fax evidence of an internet download of a list of chemicals was really a Xerox copy;

10.     Counsel was ineffective for failing to have the handwriting of Jeff Hawkins analyzed and offered into evidence at the suppression hearing with the list of chemicals the State claimed was a website download, which deprived Petitioner of the opportunity to prove that neither he nor Terry Lynn

---

[4]     Petitioner alleges that Mr. Day, who owned the field west of Petitioner's residence, would have testified, *inter alia*, that between the hours of 11:00 a.m. and 12:00 p.m. on November 11, 1997, Investigator Anderson did not get his permission to enter the field on that date and that he did not see Anderson or Investigator Thorn go into the field at that time.

Stephenson wrote out the list of chemicals that Investigator Anderson testified were used in the process of manufacturing methamphetamine;

11.     Counsel was ineffective for failing to:

(a)   move for a continuance and file motions to disclose the confidential informant information;

(b) file motions to disclose "all other suppressed evidence withheld by the State regarding investigation, reports, surveillance, and notes not provided on discovery and then move to suppress all withheld evidence"; and

(c) move to suppress all evidence due to a Rule 13.1(b) violation by Investigator Anderson;

12.     Counsel was ineffective for failing to obtain a ruling on Petitioner's motion to dismiss based on the grounds that:

(a) he was not timely brought to trial under the Arkansas speedy trial rule; and

(b) he was denied his right to a speedy trial under the Sixth Amendment;

13.     Counsel was ineffective for "failing to enter an overwhelming amount of physical evidence and witness testimony that would have proven a case of actual innocence";

14.     The state court denied Petitioner a fair evidentiary hearing on his Rule 37 petition because the court did not allow him to subpoena witnesses and documentary evidence; and

15.     The State's failure to disclose evidence amounts to suppression of evidence.

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" Maleng v. Cook, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 2254(a)).  The

Respondent, Larry Norris, the Director of the Arkansas Department of Correction, has not raised the issue of whether Petitioner is "in custody" under the Arkansas convictions he is challenging. Nevertheless, because the question is one of jurisdiction the Magistrate Judge raises the issue *sua sponte*. The habeas petitioner must be "in custody" at the time he files his petition. Maleng, 490 U.S. at 490-91; Carafas v. LaVallee, 391 U.S. 234, 238 (1968). A petitioner is not "in custody" where the sentence imposed for the conviction he is challenging has fully expired at the time his petition is filed. Maleng, 490 U.S. at 491; Charlton v. Morris, 53 F.3d 929 (8th Cir. 1995). A petitioner does not have to be physically confined on the conviction he is challenging to meet the "in custody" requirement. Maleng, 490 U.S. at 491. For example, a state prisoner on parole under an unexpired sentence is "in custody," if his liberty is restrained by conditions imposed by the Parole Board. Jones v. Cunningham, 371 U.S. 236, 241-243 (1963). Where a petitioner's parole on his first sentence is revoked and he is "ordered to serve out the first sentence only because of [a] second conviction," he can challenge his second conviction in a habeas corpus petition. Ex parte Hull, 312 U.S. 546, 549-550 (1941); Peyton v. Rowe, 391 U.S. 54, 67 (1968) ("This Court . . . held [in Ex parte Hull] that a prisoner whose first-sentence parole was revoked upon a second conviction could challenge the second conviction in a habeas corpus proceeding though he would not be released if he prevailed."). Relying on the United States Supreme Court's decision in Ex parte Hull, the Sixth Circuit has held that a petitioner who is imprisoned because his parole on a first conviction and sentence was revoked based on three subsequent convictions on other charges, for which is received thirty days in jail for one offense and suspended sentences on the other two offenses,

is "in custody" and can challenge the constitutionality of his subsequent convictions in a habeas corpus petition. Lyons v. Ohio Adult Parole Authority, 105 F.3d 1063, 1064-1065 (6th Cir. 1997). Cf. Calloway v. Powell, 393 F.2d 886, 888 (5th Cir. 1968) ("A habeas petition is not premature if petitioner's parole has been revoked because of a second conviction alleged to be without due process although imprisonment is under the original sentence.").

At the time Petitioner filed his habeas petition, he was incarcerated at the Lawton Correctional Facility in Lawton, Oklahoma, where he currently is serving the remaining portion of his life sentence on a 1960 Oklahoma conviction for murder in the first degree. Petitioner was sentenced to death by electrocution on his Oklahoma murder conviction, and his conviction and sentence were affirmed on appeal. Pate v. Oklahoma, 1961 Okla. Crim. App. 45, 361 P.2d 1096 (1961). In 1973, his death sentence was reduced to life imprisonment. Pate v. Oklahoma, 1973 Okla. Crim. App. 129, 507 P.2d 915 1096 (1973). On September 19, 1986, the Governor of Oklahoma granted him parole. On March 9, 2000, Petitioner entered his plea of *nolo contendere* in Arkansas state court to attempted manufacture of methamphetamine, possession of methamphetamine, possession of drug paraphernalia, and felon in possession of a firearm. On August 28, 2002, the Arkansas Department of Correction released Petitioner to Oklahoma prison authorities pursuant to an Oklahoma detainer. On November 13, 2002, an executive parole revocation hearing was held in Oklahoma. On January 7, 2003, the Governor of Oklahoma revoked Petitioner's parole on his 1960 Oklahoma murder conviction based on his violation of state law (his March 9, 2000, plea to the Arkansas charges) and ordered that he be incarcerated to serve the

remaining portion of his life sentence on his murder conviction with credit for street time.  Petitioner's Arkansas sentences have not expired, and he is still on parole on his Arkansas convictions.  However, he is not being supervised by the Arkansas Department of Community Correction, the entity which supervises inmates released on parole from the Arkansas Department of Correction pursuant to the authority granted by Ark. Code Ann. § 12-27-125 (Repl. 2003).  In addition, no entity or person in Arkansas has filed a detainer with the Oklahoma Department of Corrections.

Based solely on Petitioner's plea to the Arkansas charges, the Governor of Oklahoma revoked Petitioner's parole on his Oklahoma murder conviction and ordered that he serve the remainder of his life sentence on that conviction.  Based on Ex parte Hull and Lyons, the Magistrate Judge finds that Petitioner is "in custody" on his Arkansas convictions.

The Respondent also has not raised the issue of whether Petitioner has named the proper respondent or whether this Court has jurisdiction over Petitioner's custodian. "[T]he proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Rumsfeld v. Padilla, 542 U.S. 426, 434 (2005) (quoting 28 U.S.C. § 2242); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is currently in custody under a state court judgment, the petition must name as respondent the state officer who has custody."). "[T]here is generally only one proper respondent to a given prisoner's habeas petition. This custodian, moreover, is 'the person' with the ability to produce the prisoner's body before the habeas court."[5]

_____

[5]  The Supreme Court has "long implicitly recognized an exception to the immediate custodian rule in the military context where an American citizen is detained

Padilla, 542 U.S. at 434-435; Kholyavskiy v. Achim, 443 F.3d 946, 949 (7th Cir. 2006).

"In habeas challenges to present physical confinement - - 'core challenges' - -  the

default rule is that the proper respondent is the warden of the facility where the prisoner

is being held, not the Attorney General or some other remote supervisory official."

Padilla, 542 U.S. at 435. See Piercy v. Parratt, 579 F.2d 470, 472 (8th Cir. 1978) (finding

that habeas petition attacking the revocation of the petitioner's parole was "procedurally

flawed" because he failed to name his custodian, the warden of the state prison where

he was incarcerated). "Congress has authorized § 2254 petitioners challenging present

physical custody to name either the warden *or* the chief state penal officer as a

respondent." Padilla, 542 U.S. at 450 (citing Rule 2(a), Rules Governing Section 2254

Cases in the United States District Courts and the Advisory Committee Notes to Rule

2(a)).[6]  "Congress has made no such provision for § 2241 petitioners . . . ." Id.

 "[T]he immediate physical custodian rule, by its terms, does not apply when a

habeas petitioner challenges something other than his present physical confinement."

Id. at 438.  For example, in Braden v. 30th Judicial Circuit of Ky., 410 U.S. 484 (1973),

a state prisoner incarcerated in Alabama on an Alabama conviction filed a habeas

---

outside the territorial jurisdiction of any district court." Padilla, 542 U.S. at 436 n. 9.

 [6]  The Advisory Committee Notes to subdivision (a) of Rule 2 provide: "The
proper person to be served in the usual case is either the warden of the institution in
which the petitioner is incarcerated (*Sanders v. Bennett*, 148 F.2d 19 (D.C. Cir. 1945))
or the chief officer in charge of state penal institutions."  The Advisory Committee Notes
to subdivision (b) of Rule 2 provide that where the petitioner is in prison "due to the
state action he is attacking . . . [t]he named respondent shall be the state officer who
has official custody of the petitioner (for example, the warden of the prison)."

corpus petition in federal district court in Kentucky challenging a detainer lodged against him in a Kentucky state court. The detainer subjected him to future confinement in Kentucky. He did not contest the validity of his Alabama conviction. "In these circumstances, the Court held that the proper respondent was not the prisoner's immediate physical custodian (the Alabama warden), but was instead the Kentucky court in which the detainer was lodged." Padilla, 542 U.S. at 438 (citing Braden). "This made sense because the Alabama warden was not 'the person who [held] him in what [was] alleged to be unlawful custody.'" Id. (quoting Braden, 410 U.S. at 494-495). "Under *Braden*, then, a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" Id. "[I]dentification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.'" Id. at 439. It is important to note that the Rules Governing Section 2254 Cases in the United States District Courts provide that where a petitioner is not challenging his present physical confinement on a conviction but rather future custody on a separate state conviction, he must name as respondents "both the officer who has current custody and the attorney general of the state where the judgment was entered." Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts. The Advisory Committee Notes to subdivision (b) of Rule 2 provide that naming both the officer having actual custody of the petitioner and the attorney general of the state where the judgment was entered "is appropriate because no one will have custody of the petitioner in the state of the judgment being attacked, and the habeas corpus action will

usually be defended by the attorney general [,] . . . [who] is in the best position to inform the court as to who the proper party respondent is." The Advisory Committee Notes to subdivision (b) of Rule 2 further provide: "If the applicant is on parole or probation due to the state judgment he is attacking . . . [t]he named respondents shall be the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate."

"District courts are limited to granting habeas relief 'within their respective jurisdictions.'" Padilla, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)).  "[A] district court acts 'within [its] respective jurisdiction' within the meaning of § 2241 as long as 'the custodian can be reached by service of process.'" Rasule v. Bush, 542 U.S. 466, 478-479 (2004) (quoting Braden, 410 U.S. at 494-495). The language of § 2241(a) requires "'nothing more than that the court issuing the writ have jurisdiction over [the petitioner's] custodian.'" Padilla, 542 U.S. at 442 (quoting Braden, 410 U.S. at 495); Lee v. United States, 501 F.2d 494, 500-501 (8th Cir. 1974). See also  Gravink v. United States, 549 F.2d 1152, 1154 (8th Cir. 1977) ("Under the law of this circuit habeas corpus jurisdiction requires that the district court have jurisdiction over the petitioner's custodian."). "The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." Padilla, 542 U.S. at 443. "In habeas challenges to *present* physical confinement . . . the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent." Id. at 444.  "*Braden* in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over

custodians who are outside of their territorial jurisdiction." Id. at 445.  When a petitioner files a habeas petition in the district of confinement and properly names his immediate custodian, the district court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." Id. at 441 (citing Ex parte Endo, 323 U.S. 283 (1944)).  "'Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court.  That end may be served and the decree of the court made effective if the respondent who has custody of the [petitioner] is within reach of the court's process.'" Id. at 441 n. 14 (quoting Endo, 323 U.S. at 307).

The immediate-custodian and territorial-jurisdiction rules are applicable to habeas petitions filed pursuant to § 2254 as well as to those filed pursuant to § 2241. See Hogan v. State of Iowa, 952 F.2d 224, 225 (8th Cir. 1991) (§ 2254 petition); Sumbry v. Indiana State Prison, 2006 U.S. Dist. LEXIS 28754 at ** 2-3 (E.D. Ark. April 18, 2006) (§ 2254 petition), adopted by order of district court, 2006 U.S. Dist. LEXIS 28760 (E.D. Ark. May 3, 2006); White v. Grace, 2005 U.S. Dist. LEXIS 43526 at ** 5-7 (M.D. Pa. June 1, 2005) (§ 2254 petition). Padilla, 542 U.S. at 434-447 (§ 2241 petition). Cf. Carmona v. Andrews, 357 F.3d 535, 537 (5th Cir. 2004) ("The 'respective jurisdictions' language [in §  2241(a)] presumably limits the general habeas power contained in § 2254.")

It is unclear from Petitioner's amended petition and other filings whether or not he is challenging his present physical confinement.[7]  While Petitioner is attacking his

---

[7]  In his initial brief in support of his habeas petition, Petitioner requested that his "criminal charges be dismissed and that he be released from unlawful custody of the

Arkansas convictions, his purpose for doing so may be to enable him to attack his present physical confinement on his Oklahoma conviction for murder in the first degree. It is also unclear whether there is an entity or person in Arkansas who currently is exercising legal control with respect to the challenged "custody." Where a petitioner has been released on parole under the conviction being challenged, this entity or person typically will be the Parole Board or its members, <u>Jones v. Cunningham</u>, 371 U.S. at 241-242, or "the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate," Advisory Committee Notes to subdivision (b) of Rule 2, Rules Governing Section 2254 Cases in the United States District Courts. Petitioner, although on parole on his Arkansas convictions, is not being supervised by the Arkansas Department of Community Correction, the entity which supervises inmates released on parole from the Arkansas Department of Correction.  In addition, no entity or person in Arkansas has filed a detainer with the Oklahoma Department of Corrections. The Magistrate Judge finds that the Court should decline to reach the issues of whether Petitioner is challenging his present physical confinement, whether there is an entity or person in Arkansas who currently is exercising legal control with respect to the challenged "custody," whether Petitioner has named the appropriate respondent, and whether his custodian is absent from the territorial jurisdiction of this Court. The immediate-custodian and territorial-jurisdiction rules "are not jurisdictional in the sense of a limitation on subject-matter jurisdiction." <u>Padilla</u>, 542 U.S. at  451

---

state . . . ." In his amended petition, he does not indicate what relief he is seeking.

(Kennedy, J., concurring); Id. at 434 n. 7 (Rehnquist, C.J., majority opinion)  ("We use [the word 'jurisdiction'] in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."). See also Lee, 501 F.2d at 501 (the United States District Court for the Eastern District of Arkansas lacked *in personam* jurisdiction to hear the habeas petitioner's claim where neither the petitioner nor his custodian was located within the district); Hogan, 952 F.2d at 225 (because neither the petitioner nor his custodian was within the State of Iowa, "a federal court sitting in Iowa lacked in personam jurisdiction to entertain [the petitioner's § 2254] petition"); Moore v. Olson, 368 F.3d 757, 759-760 (7th Cir. 2004) (suggesting that the territorial-jurisdiction rule is a rule of venue); Moreland v. Federal Bureau of Prisons, 431 F.3d 180, 183-184 (5th Cir. 2005) (whether the Federal Bureau of Prisons and the director of the Bureau should have been joined as parties to the prisoner's § 2241 petition "raises questions of personal jurisdiction, not subject-matter jurisdiction"). "Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government." Padilla, 542 U.S. at 451-452 (Kennedy, J., concurring); McKenzie v. INS, 2005 U.S. Dist. LEXIS 2835 at * 8 (E.D. Pa. Feb. 23, 2005).  By failing to object to Petitioner's habeas petition on the basis of the immediate-custodian and territorial-jurisdiction rules, the Respondent has waived any such objections. McKenzie v. INS, 2005 U.S. Dist. LEXIS 2835 at * 8.

The Respondent contends that Claim 13 (counsel was ineffective for "failing to enter an overwhelming amount of physical evidence and witness testimony that would have proven a case of actual innocence") is procedurally barred.  In considering a

petition for federal habeas corpus relief, a district court usually is precluded from considering any issue that a state court has already resolved on an independent and adequate state law ground.  Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2001). This includes cases in which the state court judgment turns on an independent and adequate state procedural ground, such as a determination that a claim is procedurally defaulted. Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995); Reagan v. Norris, 279 F.3d at 656. A district court also is ordinarily precluded from considering any claim that a petitioner has failed to "fairly present" to the highest state court. Wemark v. State, 322 F.3d 1018, 1020-1021 (8th Cir. 2003); Trevino v. Dahm, 2 F.3d 829, 831 (8th Cir. 1993). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." Wemark, 322 F.3d  at 1021 (citing Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)). "The federal legal theory or theories must plainly appear on the face of the petitioner's state court briefs." Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994).

Where the state court dismisses a habeas petitioner's claims on independent and adequate state law grounds or the petitioner has failed to fairly present his claims to the state court, the claims are procedurally defaulted, and a federal district court cannot consider them unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or actual innocence. Wemark, 322 F.3d at 1021-22; Nims v. Ault, 251 F.3d 698, 701-702 (8th Cir. 2001); Reagan v. Norris, 279 F.3d at 656.  The existence of cause "must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).  At a minimum, a petitioner must show that something "*external* to [him], something that cannot be fairly attributed to him," caused the procedural default. Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  For example, a showing that the factual or legal basis for the claim was not reasonably available to counsel, that some interference by officials made compliance impracticable, or that counsel's performance was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668 (1984), would constitute factors external to the defense and cause for a procedural default. Coleman, 501 U.S. at 753.  Where a prisoner has no constitutional right to an attorney, such as in state post-conviction proceedings, any attorney error that led to default cannot constitute cause to excuse the default in federal court. Coleman, 501 U.S. at 757; Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997).

A narrow exception to the cause and prejudice standard exists where the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo,  513 U.S. 298, 327 (1995); Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001); Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995).  To be credible, "a substantial claim that constitutional error has caused the conviction of an innocent person" must be supported with "new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - -

that was not presented at trial." <u>Schlup</u>, 513 at 324; <u>House v. Bell</u>, _____ U.S. _____, 126 S. Ct. 2064, 2087-2088 (2006).   "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" <u>Osborne v. Purkett</u>, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Amrine</u>, 238 F.3d at 1029).

The Magistrate Judge finds that Petitioner failed to fairly present Claim 13 in the argument section of his brief in his appeal to Arkansas Supreme Court from the denial of Rule 37 relief. Accordingly, Claim 13 is procedurally defaulted.  The Magistrate Judge finds that Petitioner has not shown cause for his procedural default of Claim 13 nor actual prejudice. The Magistrate Judge further finds that Petitioner has not demonstrated that, in light of new reliable evidence, it is more likely than not that no reasonable juror would have convicted him. Accordingly, the Magistrate Judge recommends that Claim 13 be dismissed as procedurally barred. Even if this claim were considered on the merits, Petitioner would not be entitled to relief. In Claim 13, Petitioner contends that counsel was ineffective for "failing to enter an overwhelming amount of physical evidence and witness testimony that would have proven a case of actual innocence." In <u>Strickland v. Washington</u>, the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel. Under this standard, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687-688.  He must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694.  The two-part <u>Strickland</u> test applies where a petitioner who plead guilty or *nolo contendere* claims

that his counsel was ineffective. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985) (plea of guilty); <u>Slicker v. Wainwright</u>, 809 F.2d 768, 769-770 (11th Cir. 1987) (plea of *nolo contendere*); <u>Henderson v. Singletary</u>, 837 F. Supp. 1176, 1178 (M.D. Fla. 1993) (plea of *nolo contendere*). In order to satisfy the second prong of the test - - the prejudice requirement - a petitioner who entered a plea "must show that there is a reasonable probability, but for counsel's errors, he would not have pleaded . . . and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.   Because Petitioner plead *nolo contendere,* counsel acted reasonably in not entering, at Petitioner's plea hearing, "an overwhelming amount of physical evidence and witness testimony that would have proven a case of actual innocence." Counsel also acted reasonably in not entering such evidence at the suppression hearing. The purpose of a motion to suppress evidence is to object to the use of certain evidence by the State on the ground that it was obtained by means of an unlawful search and seizure. Ark. R. Crim. P. 16.2. The issue at a suppression hearing is not whether the defendant is actually innocent but rather whether the search for and seizure of evidence was valid. <u>See</u> <u>United States v. Clark</u>, 475 F.2d 240, 247 (2d Cir. 1973) ("the trial focuses on the issue of guilt or innocence, while the suppression hearing centers upon the validity of the search for and seizure of evidence . . ."). The Magistrate Judge further finds that Petitioner has not shown that there is a reasonable probability that, but for counsel's failure to enter the evidence in question, he would not have pleaded *nolo contendere* and would have insisted on going to trial.

Claims 1(a), 2(a), 3, 4, 5, 6, 7, 8, 9, 10, 11(a) and 11(c) all involve counsel's alleged ineffectiveness in failing to take actions that Petitioner asserts would have

resulted in the suppression of evidence obtained in the search of his mobile home, blue Chevrolet Camaro, and storage shed.  All of these claims either were adjudicated by the circuit court or by Arkansas Supreme Court, or by both courts. This Court's power to review state court decisions in habeas corpus cases is restricted to the "limited and deferential review" mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004)), cert. denied, 544 U.S. 1065 (2005). Under the AEDPA, a petition for writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Liggins v. Burger, 422 F.3d 642, 646-647 (8th Cir. 2005), cert. denied, 126 S. Ct. 1359 (2006); Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005); Johnston v. Luebbers, 288 F.3d 1048, 1051 (8th Cir. 2002). "A state court decision is 'contrary to' clearly established federal law if the rule applied by the state court directly contradicts Supreme Court precedent or if the state court reached a result opposite a result reached by the Supreme Court on 'materially indistinguishable' facts." Johnston, 288 F.3d at 1051 (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). "A state court decision involves an unreasonable application of Supreme Court precedent if it correctly identifies the governing legal rules

but unreasonably applies them to the facts of the prisoner's case." <u>Ford v. Bowersox</u>, 256 F.3d 783, 786 (8th Cir. 2001) (citing <u>Williams v. Taylor</u>, 529 U.S. at 407). "The focus under the unreasonable application test is 'whether the state court's application of clearly established federal law is objectively unreasonable.'" <u>Hoon v. Iowa</u>, 313 F.3d 1058, 1061 (8th Cir. 2002) (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002)). "An incorrect decision is not necessarily unreasonable, and [a district court] may not grant a writ of habeas corpus unless the state court decision is both wrong and unreasonable." <u>Palmer v. Clarke</u>, 408 F.3d 423, 429 (8th Cir.), <u>cert. denied</u>, 126 S. Ct. 755 (2005); <u>Colvin v. Taylor</u>, 324 F.3d 583, 587 (8th Cir. 2003).   "A reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases-indeed, it does not even require awareness of [these cases], so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Cox v. Burger</u>, 398 F.3d 1025,1030 (8th Cir. ) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)), <u>cert. denied</u>, 126 S. Ct. 93 (2005). "Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003). The provisions of § 2254(d) mandating deference to state court adjudications on the merits apply to decisions of both state trial courts and state appellate courts. <u>Newton v. Kemna</u>, 354 F.3d 776, 782-783 (8th Cir.) (state trial court decisions), <u>cert. denied</u>, 543 U.S. 979 (2004); <u>Weaver v. Bowersox</u>, 241 F.3d 1024, 1030-1032 (8th Cir. 2001) (state trial court and state appellate court decisions); <u>Ellis v. Norris</u>, 232 F.3d 619, 622-623

(8th Cir. 2000) (state appellate court decisions).  The "summary nature" of a state court adjudication "does not affect the standard of review" mandated by § 2254(d). James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

Even if a state court renders a decision contrary to, or unreasonably applying, Supreme Court precedent under § 2254(d)(1), or issues a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding under § 2254(d)(2), a habeas petitioner, to be entitled to relief, must still meet the standard set forth in 28 U.S.C. § 2254(a) - - i.e, he must demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." See Aleman v. Sternes, 320 F.3d 687, 690 (7th Cir. 2003) (even if the state court renders a decision contrary to, or unreasonably applying, federal law under § 2254(d)(1), a habeas petitioner, to be entitled to relief, must still meet the standard set forth in § 2254(a)); Stevens v. Horn, 319 F. Supp. 2d 592, 614 (W.D. Pa. 2004) (even if a state court's decision is contrary to Supreme Court precedent under § 2254(d)(1), the petitioner must still show that his constitutional rights were violated to be entitled to relief), affd, 2006 U.S. App. LEXIS 17043 (3d Cir. July 7, 2006); Palmer v. Clarke, 408 F.3d at 436 (even if a state appellate court errs in its analysis, a habeas petitioner "is not entitled to relief on this ground unless his constitutional or statutory rights were violated. See 28 U.S.C. § 2254(a)"); Gibbs v. Van Natta, 329 F.3d 582, 584 (7th Cir. 2003) ("Gibbs is not entitled to relief in the federal courts unless he can show that he was in fact denied effective assistance of counsel, not merely that the state courts bobbled the issue.").

Where a petitioner who entered a plea claims that counsel was ineffective, he

must demonstrate that "counsel's representation fell below an objective standard of reasonableness,'" Strickland, 466 U.S. at 687-688, and that "there is a reasonable probability, but for counsel's errors, he would not have pleaded . . . and would have insisted on going to trial," Hill, 474 U.S. at 59.   Where a claim of ineffective assistance of counsel is based on counsel's failure to file a motion to suppress evidence seized during a search, the petitioner must show that the motion to suppress would have been meritorious. See United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005), cert. denied, 126 S. Ct. 1021 (2006); Zakrzewski v. McDonough, 455 F.3d 1254,1260 (11th Cir. 2006); Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir. 2003); United States v. Munoz, 2005 U.S. App. LEXIS 28390 at * 3 (7th Cir. 2005).   See also Kimmelman v. Morrison, 477 U.S. 365, 368, 382 (1986) ("a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim" that counsel was ineffective for failing to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment); United States v. Johnson, 707 F.2d 317, 320 (8th Cir. 1983) (in determining whether there was prejudice to the defendant from his counsel's failure to file a motion to suppress "what is essentially the only evidence against a defendant," a court must examine whether the motion, "if one had been made, would have been successful"); Kellogg v. Scurr, 741 F.2d 1099, 1104 (8th Cir. 1984) ("The prejudice flowing from an attorney's failure to file a suppression motion is determined by examining the likely success of the motion."). This showing is required whether the Petitioner plead to the charges or was convicted after a trial. Cieslowski, 410 F.3d at 360 (guilty plea); Zakrzewski, 455 F.3d at 260 (guilty plea); Ortiz-Sandoval, 323 F.3d at 1170 (jury trial).   The requirement that a petitioner show that his motion to suppress

would have been meritorious is appropriate where, as in this case, the petitioner contends not only that counsel was ineffective for failing to move to suppress certain evidence, but also alleges that counsel was ineffective for failing to take actions which he asserts would have resulted in the suppression of evidence.

The Arkansas Supreme Court, in affirming the denial of Rule 37 relief, adjudicated Claims 2(a), 3, 4, 5, 6, 7, 8, and 11(c) on the merits. The Supreme Court found that Petitioner "cannot prevail on his allegations of ineffective assistance of counsel at the suppression hearing because he failed to produce factual support for his Rule 37 petition." Pate v. State, 2004 Ark. LEXIS 408 at * 4. The Court found that "[a]lthough appellant filed a lengthy Rule 37 petition listing twenty-two witnesses and identifying specific evidence he alleges his attorney should have presented at the suppression hearing, he did not attach any evidence to his Rule 37 petition." Id. The Supreme Court further found that at the Rule 37 hearing Petitioner failed to present any witness other than himself, did not introduce any evidence, and "stood on his petition." Id. As previously noted, Petitioner indicated at the Rule 37 hearing that he wanted to "stand" on his Rule 37 petition. Rule 37 Hearing Transcript, p. 142. Petitioner testified at the Rule 37 hearing, but did not call any other witnesses or present any other evidence. Petitioner testified or argued at the hearing, *inter alia*, that (1) the information contained in Facts 1, 2, 3, and 4 in Investigator Anderson's affidavit was remote hearsay, (2) counsel refused to attack Facts 1,2, and 3 even though Petitioner laid everything out for them and gave them all the information, (3) although Anderson stated in Fact 4 of his affidavit that he and Travis Thorn drove by Petitioner's residence and smelled chemicals, it would have been impossible for them to have smelled anything

west of Petitioner's residence because "there is a national weather report for that day and particular time that shows that the wind was out of the north [at] seven miles per hour," (4) "[a] neighbor who lived across the street will testify" that he knew that Investigator Anderson and Investigator Thorn were lying when they stated to him that they smelled ether because there was a cold wind was blowing out of the north on November 11, 1997, (5) the State Crime Lab supervisor stated that there was no evaporation and therefore no odor from the glass jars with lids on them and it would have been impossible for Anderson, who had on an APR mask that filtered ether, to have smelled ether, and (6) defense counsel refused to present the weather reports, dispatch sheets, and other evidence. Tr. 145-148.

A petitioner has the burden of presenting evidence to meet the performance and prejudice prongs of Strickland and Hill. James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996) (performance and prejudice prongs of Strickland); Amos v. State of Minnesota, 849 F.2d 1070, 1072 (8th Cir. 1988) (performance prong of Strickland); Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003) (prejudice prong of Strickland); Kitt v. Clarke, 931 F.2d 1246, 1249 (8th Cir. 1991) (prejudice prong of Strickland); Moses v. United States, 1999 U.S. App. LEXIS 6076 at * 3 (8th Cir. April 2, 1999) (prejudice prong of Hill); Gargano v. United States, 852 F.2d 886, 890 (7th Cir. 1988) (prejudice prong of Hill); United States v. Camarato, 2006 U.S. Dist. LEXIS 30026 at * 2 (D. Or. May 10, 2006) (performance and prejudice prongs of Hill). Mere allegations are insufficient to satisfy the prejudice prong of Hill. Gargano, 852 F.2d at 890. The Arkansas Supreme Court's decision adjudicating Claims 2(a), 3, 4, 5, 6, 7, 8, and 11(c) against Petitioner is based on its finding that Petitioner failed to introduce evidence in support of his

petition other than his own testimony. The evidence Petitioner introduced in support of his Rule 37 petition, and in particular in support of Claims 2(a), 3, 4, 5, 6, 7, 8, and 11(c), unquestionably was insufficient to demonstrate that his motion to suppress was meritorious and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded *nolo contendere* and would have insisted on going to trial. The Magistrate Judge finds that Petitioner has not shown the Arkansas Supreme Court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, Strickland or Hill. Furthermore, he has failed to present clear and convincing evidence that the Supreme Court's presumptively correct factual findings do not enjoy support in the record.[8] Therefore, the Arkansas Supreme Court's decision

---

[8] It is important to note that prior to the adoption of the AEDPA, federal district courts commonly held evidentiary hearings so that a petitioner could develop the factual basis for his claims. The AEDPA sharply limits a federal district court's power to conduct an evidentiary hearing. 28 U.S.C. § 2254(e)(2); Perry v. Kemna, 356 F.3d 880, 889 (8th Cir.), cert. denied, 543 U.S. 1022 (2004). Where a petitioner "has failed to develop the factual basis of a claim in State court proceedings," a district court cannot hold an evidentiary hearing unless the petitioner shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the [petitioner] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B); Perry, 356 F.3d at 889.  He must also show that his claim relies on either "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or "(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). Petitioner has not met the requirements of § 2254(e)(2)(B). Accordingly, the Court cannot conduct an evidentiary hearing. It also should be noted that on August 3, 2005, Petitioner filed a petition for writ of *certiorari* to complete the record, requesting that this Court order the State of Arkansas to produce, *inter alia*, (1) "the record of the abstract" of his post-conviction appeal to the Arkansas Supreme Court which was omitted from the Respondent's Exhibit 7a, (2) the "verbal proceedings transcripts" of November 30, 1998, and June 2, 1999, and the "proceedings" of June 17, 1999, which "are material to [his] claims and should be included in the record on appeal to show the validity of the issues in dispute," and (3) the notes of Investigator Anderson showing the location of the items found at Petitioner's residence, which were submitted to the circuit judge but

does not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. <u>Lomholt</u>, 327 F.3d at 752.

The circuit court adjudicated Claims 1(a), 9, 10, and 11(a) on the merits in denying Petitioner's Rule 37 petition, finding that "the Court is unable to determine from the evidence presented through the testimony of Mr. Pate that any prejudice resulted sufficient to warrant granting of the Petition as a result of the actions of counsel." The evidence presented by Petitioner in support of his Rule 37 petition, and in particular in support of Claims 1(a), 9, 10, and 11(a), unquestionably was insufficient to demonstrate that his motion to suppress was meritorious and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded *nolo contendere* and would have insisted on going to trial. The Magistrate Judge finds that Petitioner has not shown the circuit court's adjudication of Claims 1(a), 9, 10, and 11(a) resulted in a decision that was contrary to, or involved an unreasonable application of, <u>Strickland</u> or <u>Hill</u>. Furthermore, he has not demonstrated that the circuit court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

were excluded as an exhibit. By an order entered on August 15, 2005, this Court denied Petitioner's petition for writ of *certiorari* to complete the record, finding that at the appropriate time, the Court would determine which records are necessary for resolution of the case. On October 19, 2005, this Court directed the Respondent to file the abstract in Petitioner's appeal from the denial of Rule 37 relief. On November 2, 2005, the Respondent filed Petitioner's abstract and brief in his appeal from the denial of Rule 37 relief. The Court finds that Petitioner has not shown that the materials he wants produced by the State (other than the abstract in Petitioner's appeal from the denial of Rule 37 relief) are necessary to the resolution of his claims.

In conclusion, the Magistrate Judge recommends that Claims 1(a), 2(a), 3, 4, 5, 6, 7, 8, 9, 10, 11(a) and 11(c) be dismissed with prejudice. Even if these claims were considered without giving deference to the state courts' adjudications, Petitioner would not be entitled to relief. The Magistrate Judge finds that Petitioner has not submitted evidence showing that his motion to suppress would have been meritorious and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded *nolo contendere* and would have insisted on going to trial. The chances are remote that the trial court would have suppressed the evidence obtained in the search even if counsel had taken the actions Petitioner alleges he should have taken. For example, in Claim 4 Petitioner alleges that counsel was ineffective for failing to introduce at the suppression hearing "a National Weather Bureau Report" for November 11, 1997, showing that at 89 Gap View Road in Conway, Arkansas, the wind was blowing out of the north at seven miles per hour. He alleges that the report would have shown that Investigator Anderson's statement "in Fact 4 and his testimony that he and [Investigator] Thorn drove by [Petitioner's] house in a field to the West and smelled a strong odor of chemicals (ether) was deliberately false."[9] The Magistrate Judge finds that showing that the wind was blowing out of the north in Conway on November 11, 1997, would not have demonstrated that Anderson's statements and testimony were deliberately false or changed the circuit court's ruling on Petitioner's

---

[9]  In Fact 4, Anderson actually stated that he and Thorn "went to the residence of 89 Gap View Road, Conway, Arkansas, and could smell a very strong odor of chemicals."  In his testimony at the suppression hearing, Anderson  actually  testified that he went to a field on the "other side" of the residence at 89 Gap View Road and smelled "a strong odor of ether." Suppression Hearing Transcript, pp. 191-192.

motion to suppress.[10] Just because the wind was blowing out of the north in Conway

on November 11, 1997, does not necessarily mean that trained officers could not have

smelled ether emanating from somewhere on or near the premises at 89 Gap View

Road in Conway on that date.  In United States v. Richey, 2006 U.S. App. LEXIS 7753

(8th Cir. March 28, 2006), the defendant entered a conditional plea of guilty to

manufacturing methamphetamine, reserving his right to appeal the district court's denial

of his motion to suppress.  On appeal to the Eighth Circuit, the defendant argued that

the affidavit in support of the search warrant application contained misrepresentations

and challenged the veracity of a police officer's statement that he smelled a strong odor

of ether coming from the defendant's house when he walked by the house on February

5, 2004. The defendant based his challenge primarily on the wind direction on February

5, 2004 (blowing away from the street) and his belief that no odors could have escaped

---

[10]  Petitioner has not submitted "a National Weather Bureau Report" for Conway, Arkansas, for November 11, 1997.  In examining the historical weather data for Arkansas contained on the website for the United States Department of Commerce's National Climatic Data Center (www.ncdc.noaa.gov/oa/ncdc.html), which is world's largest active archive of weather data and publishes the historical weather data for the National Oceanic and Atmospheric Administration's (NOAA) National Weather Service, it does not appear that a report showing the wind direction on November 11, 1997, in Conway is available. A court can take judicial notice of weather data or lack of weather data contained in government weather bureau records. See Freeman v. Berge, 2003 U.S. Dist. LEXIS 26763 at * 7 (W.D. Wis. Dec. 17, 2003) (taking judicial notice of records of the National Climatic Data Center reflecting that the temperature in Boscobel, Wisconsin, in July and August of 2000 only exceeded 90 degrees once); Chubb & Son, Inc. v. Kelleher, 2006 U.S. Dist. LEXIS 67879 at * 9 (E.D.N.Y. Sept. 21, 2006) (taking judicial notice of the records of the NOAA reflecting that Hurricane Wilma did not strike a certain region in Florida until October 23, 2005); Allen v. Ashcroft, 2006 U.S. Dist. LEXIS 46139 at * 7 (S.D. Ill. July 7, 2006) (taking judicial notice of the historical weather records of Marion, Illinois, reflecting the low temperatures for the period of September 29 through October 11, 2002); Fouch v. Werner, 99 Cal. App. 557, 562, 279 P. 183, 185 (1929) (taking judicial notice of government weather bureau reports reflecting when the sun set on April 1, 1927).

from his home because he had installed an odor filtering system in the bathroom where the methamphetamine lab was located. The Eighth Circuit found that the officer's statement that there was a noticeable odor of ether from the defendant's house was corroborated by the sworn testimony of two other officers. Id. at * 3. The Eighth Circuit found no error in the district court's determination that the officers' statements were credible or in the district court's ultimate conclusion that the warrant established probable cause.  Id. at ** 3-4.

In Claim 12(a), Petitioner contends that counsel was ineffective for failing to obtain a ruling on Petitioner's motion to dismiss based on the ground that he was not timely brought to trial under the Arkansas speedy trial rule - - Rule 28 of the Arkansas Rules of Criminal Procedure.[11] The Arkansas Supreme Court adjudicated this claim in Petitioner's appeal from the denial of Rule 37 relief.

On January 14, 2000, Petitioner's counsel filed a motion to dismiss, alleging that Petitioner was not timely brought to trial under Rule 28 and that his constitutional right to a speedy trial was violated. The circuit court apparently did not rule on the motion to dismiss.  In adjudicating Petitioner's claim that his attorney was ineffective for failing to

---

[11] Under Rule 28.1(c), a defendant is entitled to have the charges against him dismissed with an absolute bar to prosecution if he is "not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding such periods of necessary delay as are authorized in Rule 28.3."  Under Rule 28.2(a), the time for trial begins to run "from the date the charge is filed, except that if prior to that time, the defendant has been continuously held in custody or on bail or lawfully at liberty to answer for the same offense or an offense based on the same conduct or arising from the same criminal episode, then the time for trial shall commence running from the date of arrest." Excludable periods under Rule 28.3 include "[t]he period of delay resulting from a continuance granted at the request of the defendant or his counsel." Ark.R.Crim.P. 28.3(c).

obtain a ruling on the motion to dismiss on speedy trial grounds prior to Petitioner's entering his plea, the Arkansas Supreme Court found that a delay of 443 days was caused by continuance orders chargeable to Petitioner and that the remaining 351 days were within the one-year period the State was required to bring Petitioner to trial under Rule 28. Pate v. State, 2004 Ark. LEXIS 408 at * 5.  Accordingly, the Supreme Court concluded that Petitioner's motion to dismiss on the ground that he was not timely brought to trial under Rule 28 lacked merit and that counsel could not be ineffective for failing to obtain a ruling on a motion that had no merit. Id.

This Court is bound by the Arkansas Supreme Court's finding that Petitioner was timely brought to trial under Rule 28. See Hall v. Iowa, 1992 U.S. App. LEXIS 19773 at * 3 (8th Cir. July 10, 1992) (a federal appellate court is bound by a state court's interpretation of its speedy trial rule); Missouri v. Hunter, 459 U.S. 359, 368 (1983) (the United States Supreme Court is bound by a state appellate court's construction of its own statutes); Hair v. Lockhart, 734 F.2d 390, 391 (8th Cir. 1984) (a federal appellate court is bound by a state appellate court's finding that two offenses are distinct offenses for double jeopardy purposes); Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law.").  Accordingly, Petitioner's counsel was not ineffective for failing to obtain a ruling on Petitioner's motion to dismiss based on the ground that he was not timely brought to trial under Rule 28. The Magistrate Judge finds that Petitioner has not shown that the Supreme Court's adjudication of his claim that his attorney was ineffective for failing to obtain a ruling on the motion to dismiss based on the ground that he was not timely brought to trial under Rule 28 resulted in a decision that was contrary to, or

involved an unreasonable application of, <u>Strickland</u> or <u>Hill</u>. Furthermore, he has not

demonstrated that Supreme Court's adjudication resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

Petitioner's remaining claims, Claims 1(b), 2(b), 11(b), 12(b), 14, and 15, were

not adjudicated by the state courts.

In Claim 1(b), Petitioner contends that counsel was ineffective for failing to

challenge on direct appeal Facts 1-3 contained in Investigator Anderson's affidavit in

support of the application for the search warrant.[12] Petitioner asserts that Investigator

_____

[12]  Facts 1-3 were as follows:

FACT 1: On October 23, 1997, Faulkner County Detective Jim
Wooley contacted the Conway Regional Drug Task Force with
information of a female by the name of Terr[y] Lynn Stephenson,
aka Terri Lynn Bradberry, who is associated with a Gerald Pate
who resides at 89 Gap View Road, Conway, Arkansas. According
to individuals at John Deere in Damascus, Arkansas, Stephenson
had come into the business and bought all the ether they had,
which was sixteen (16) cans of starting fluid. A photograph of
Stephenson was shown to the employees at John Deere in
Damascus, Arkansas, and they positively identified Stephenson
as the person who made the purchase of the starting fluid.
Stephenson was driving a blue Chevrolet Camaro, displaying
license plate number 964 ATW, which returns to Gerald Pate.

FACT 2: On or about October 25, 1997, a white female, later
identified as Terr[y] Lynn Stephenson, entered the Duncan
Outdoor, Conway, Arkansas, and purchased twenty-four (24)
cans of starting fluid.

FACT 3: On November 8, 1997, Terr[y] Lynn Stephenson entered
the Duncan Outdoor, Conway, Arkansas, and purchased thirty-six
(36) cans of starting fluid. Stephenson made a comment to an
employee that she likes the John Deere starting fluid because it is
80% ether. On that day, Terr[y] Stephenson was driving a gray

Anderson's "reckless disregard for the truth in Fact 1 carried through to Facts 2 & 3, but were not objected to or challenged . . . on appeal by defense counsel."

First of all, Petitioner's counsel did challenge Fact 1 on direct appeal. In support of his argument on direct appeal that the trial court erred in denying his motion to suppress because the search warrant was not supported by probable cause, counsel argued, *inter alia*, that Investigator Anderson's testimony at the suppression hearing that a photograph was shown to a confidential informant who picked Ms. Stephenson out was in direct conflict with the facts set forth in Fact Number 1 of the affidavit, which states that the photograph was shown to employees. Counsel argued, therefore, that the affidavit was not only misleading but did not provide any information about the informant used to identify Ms. Stephenson. In adjudicating Petitioner's claim, the Arkansas Court of Appeals first found that "[t]ying the female purchaser to appellant's car may well be enough to support her identification as Terry-Lynn Stephenson in Fact Number 1." Pate v. State, 2001 Ark. App. LEXIS 416 at * 5. The Court found that even if it were to determine that it was necessary to exclude the information included in Fact Number 1, the Court would still find the search warrant was supported by probable cause. Id. The Court of Appeals found that Petitioner "does not specifically challenge Fact Numbers 2 and 3" and that even if the Court "were to discard the identification of Ms. Stephenson in Fact Number 1, under the second prong of the Franks test the

_____

Buick Skylark, displaying license plate number 283 BMY, which returns to Terr[y] Lynn Stephenson. A photograph of Stephenson was showed to the employees of Duncan Outdoor and they positively identified her as the person purchasing the starting fluid.

affidavit's remaining content would be sufficient to establish probable cause." Id.

While counsel did not challenge Facts 2 and 3 on direct appeal, Petitioner has not submitted any evidence showing a reasonable probability that, but for counsel's failure to challenge these facts on direct appeal, the Arkansas Court of Appeals would have concluded there was insufficient evidence to establish probable cause.  Even if the Court discards Investigator Anderson's statements in Facts 1 and 3 that employees of John Deere and Duncan Outdoor were shown Terry Lynn Stephenson's photograph and identified her as the person who purchased the starting fluid, the following statements or testimony are sufficient to establish probable cause: (1) a woman purchased sixteen cans of starting fluid from John Deere on October 23, 1997, and she was driving Petitioner's blue Chevrolet Camaro when she did so, (2) the same woman purchased twenty-four cans of starting fluid from Duncan Outdoor on October 25, 1997, (3) a woman driving Terry Lynn Stephenson's gray Buick Skylark purchased 36 cans of starting fluid from Duncan Outdoor on November 8, 1997, and commented that she liked the John Deere starting fluid because "it is 80% ether," (4) on November 11, 1997, Investigator Anderson and Investigator Travis Thorn went to field on the "other side" of Petitioner's residence, where Anderson smelled a strong odor of ether and Thorn smelled a very strong odor of chemicals, and (5) Petitioner's blue Chevrolet Camaro and Stephenson's gray Buick Skylark were at the residence on November 11, 1997. In conclusion, the Magistrate Judge finds that Petitioner has not shown that there is a reasonable probability that, but for counsel's failure to challenge Facts 1, 2, and 3 on direct appeal, the result of his appeal would have been different.

In Claim 2(b), Petitioner contends that counsel was ineffective for failing to call

Gary Dallas at the suppression hearing to support actual innocence. Petitioner alleges that Dallas, who testified at Terry Lynn Stephenson's bench trial, would have testified, *inter alia*, that as long as the gallon jar of ether was sealed, "especially in a jar with a lid and seal in that condition, it could have been there for months," that "if the container was open, it would evaporate in just a few hours," and that "none of the necessary chemicals were found." At Terry Lynn Stephenson's bench trial, Dallas testified that testing of the clear liquid and white sediment in the gallon jar found in Petitioner's shed revealed that the liquid was ether and that the white sediment was methamphetamine. Stephenson Trial Transcript, pp. 349-350. Gary Dallas also testified: "As long as [the gallon jar] was completely sealed, which is fairly difficult with ether, especially in a jar with a lid and seal in that condition, it could have been [there for months]. I don't know how - - I don't have a time period." Tr. 366. He stated that if a container containing a mix of ether and methamphetamine were left open, the ether would evaporate over a few hours time. Tr. 371.  Dallas also testified that he found an anhydrous ammonia tank in the storage shed at Petitioner's residence, that the tank appeared to be full or almost full, and that anhydrous ammonia is used in the manufacturing of methamphetamine if the Nazi method is used. Tr. 346-348. He testified that either ephedrine or pseudoephedrine and either lithium strips or sodium metal are used in the Nazi method of manufacturing methamphetamine. Tr. 347. Anderson also testified that niacinamide, which was found in Petitioner's mobile home, is used as a cutting agent for methamphetamine. Tr. 357.  He testified that testing of the residue on the coffee filters in the plastic bag found in Petitioner's mobile home revealed that the residue was methamphetamine. Tr. 359.  Gary Dallas did not testify that "none of the necessary

chemicals were found." After considering the testimony of Gary Dallas, well as other evidence, the trial judge found that Terry Lynn Stephenson was guilty of manufacturing methamphetamine, finding that there was "ample evidence" based on the testimony of Dallas "that there were chemicals there that essentially was crystal methamphetamine in process." Tr. 455.

First of all, the issue at a suppression hearing is not whether the defendant is actually innocent but rather whether the search for and seizure of evidence was valid. Clark, 475 F.2d at 247. Furthermore, Gary Dallas' testimony at Terry Lynn Stephenson's trial tends to incriminate Petitioner rather than show his innocence. Based on Dallas' testimony, the trial court found Stephenson guilty of manufacturing methamphetamine, a more serious charge than the charge to which Petitioner plead *nolo contendere* - - attempted manufacture of methamphetamine.   In conclusion, Petitioner has not shown that there is a reasonable probability that, but for counsel's failure to call Gary Dallas to support actual innocence, he would not have pleaded *nolo contendere* and would have insisted on going to trial.

In Claim 11 (b), Petitioner contends that counsel was ineffective for failing to file motions to disclose "all other suppressed evidence withheld by the State regarding investigation, reports, surveillance, and notes not provided on discovery and then move to suppress all withheld evidence." Petitioner has not submitted evidence showing that a motion to suppress would have been meritorious and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded *nolo contendere* and would have insisted on going to trial.

In Claim 12(b), Petitioner contends that counsel was ineffective for failing to

obtain a ruling on Petitioner's motion to dismiss based on the ground that he was denied his right to a speedy trial under the Sixth Amendment.

In <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), the United States Supreme Court identified four factors to consider when determining whether a petitioner has been denied his Sixth Amendment right to a speedy trial: (1) the length of delay, (2) the reason for the delay, (3) whether the defendant asserted his or her speedy trial right, and (4) prejudice to the defendant. <u>Barker</u>, 407 U.S. at 530. <u>See also</u> <u>United States v. Sprouts</u>, 282 F.3d 1037, 1042 (8th Cir. 2002). "[T]he Sixth Amendment right to speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." <u>Sprouts</u>, 282 F.3d at 1042; <u>United States v. Perez-Perez</u>, 337 F.3d 990, 995 (8th Cir. 2003). "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has passed the threshold dividing ordinary from 'presumptively prejudicial' delay." <u>Doggett v. United States</u>, 505 U.S. 647, 651-652 (1992) (quoting <u>Barker</u>, 407 U.S. at 530-531). "A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the Barker factors." <u>United States v. Titlbach</u>, 339 F.3d 692, 699 (8th Cir. 2003). A delay of seventeen months requires a court to "look at the other factors in the balancing test." <u>United States v. Shepherd</u>, 462 F.3d 847, 2006 U.S. App. LEXIS 23081 at * 18 (8th Cir. Sept. 11, 2006).

On November 11, 1997, Petitioner was arrested. On November 12, 1997, he was charged with manufacturing methamphetamine, possession of methamphetamine, possession of drug paraphernalia, and felon in possession of a firearm. Petitioner filed his motion to dismiss on speedy trial grounds on January 14, 2000. Petitioner entered

his plea of *nolo contendere* on March 9, 2000.

The delay of approximately two years and four months between Petitioner's arrest and his plea requires the Court to look at the other <u>Barker</u> factors. In adjudicating Petitioner's claim that counsel was ineffective for failing to obtain a ruling on the motion to dismiss for lack of a speedy trial, the Supreme Court of Arkansas found that a delay of 443 days was caused by continuance orders chargeable to Petitioner. "[A] determination of a factual issue made by State court is presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted, by clear and convincing evidence, the presumption of correctness attached to the Supreme Court's finding that a delay of 433 days was caused by continuance orders chargeable to him.[13] The Magistrate Judge further finds that there is no evidence that the State "intentionally caused any delay or filed pretrial motions to cause delay in order to gain a tactical advantage." <u>United States v. Shepherd</u>, 2006 U.S. App. LEXIS 23081 at * 18. While Petitioner filed a motion to dismiss on speedy trial grounds, he waited until January 14, 2000, to do so. Petitioner made no attempt to have his case brought to trial sooner. A defendant's delay in filing a motion to dismiss based on a speedy trial violation and his failure to seek to have the case brought to trial sooner are important

---

[13] In his amended petition, Petitioner contends that the "correct total" is 387 days. The Magistrate Judge finds that even if the delay caused by continuance orders chargeable to Petitioner actually was 387 days or less than 387 days, it would make no difference in the Sixth Amendment speedy trial analysis or in the Court's disposition of his argument that counsel was ineffective for failing to obtain a ruling on Petitioner's motion to dismiss based on the ground that he was denied his Sixth Amendment right to a speedy trial.

factors to consider when evaluating the third <u>Barker</u> factor. <u>Id</u>. With respect to prejudice, the fourth <u>Barker</u> factor, Petitioner has not alleged that his defense was impaired by the delay. <u>See Shepherd</u>, 2006 U.S. App. LEXIS 23081 at * 18. The Magistrate Judge finds that Petitioner's Sixth Amendment right to a speedy trial was not violated, and that counsel was not ineffective for failing to obtain a ruling on Petitioner's motion to dismiss based on the ground that he was denied his right to a speedy trial under the Sixth Amendment.[14]

In Claim 14, Petitioner contends that the state court denied him a fair evidentiary hearing on his Rule 37 petition because the court did not allow him to subpoena witnesses and documentary evidence. A writ of habeas corpus is not the appropriate remedy for a state prisoner to challenge errors or defects in state post-conviction proceedings. <u>Williams v. State of Missouri</u>, 640 F.2d 140, 143 (8th Cir. 1981); <u>Mitchell v. Wyrick</u>, 727 F.2d 773, 774 (8th Cir. 1984); <u>Smith v. Lockhart</u>, 882 F.2d 331, 334-335 (8th Cir. 1989); <u>Kirby v. Dutton</u>, 794 F.2d 245, 247 (6th Cir. 1986). Accordingly, Petitioner's claim is not cognizable in habeas. Furthermore, Petitioner was not denied a fair evidentiary hearing on his Rule 37 petition because of any failure of the trial court to allow him to subpoena witnesses or documentary evidence. As previously noted, the record does not reflect that Petitioner, prior to the evidentiary hearing on his Rule 37

---

[14] It should be noted that Petitioner also alleges that counsel was ineffective for failing to obtain a ruling on his motion to dismiss based on the ground that he was denied his right to equal protection. In the motion to dismiss on speedy trial grounds, counsel did not allege that Petitioner was denied his right to equal protection. Accordingly, counsel was not ineffective for failing to obtain a ruling on Petitioner's motion to dismiss based on the ground that he was denied equal protection. Furthermore, Petitioner has not alleged facts even tending to show a violation of his right to equal protection.

petition, filed a separate motion requesting that the circuit court subpoena particular witnesses and evidence for the hearing or that he provided a witness or evidence list to the circuit court.  Furthermore, at the hearing Petitioner indicated that he wanted to "stand" on his Rule 37 petition rather than present witnesses and documentary evidence.  Rule 37 Hearing Transcript, p. 142.

In Claim 15, Petitioner contends that the State's failure to disclose evidence amounts to suppression of evidence. The legal effect and practical consequences of a plea of guilty and a plea of *nolo contendere* are the same. See Rawls v. Mabry, 630 F.2d 654, 659-660 (8th Cir. 1980); Carter v. Collins, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990); Seaton v. State, 324 Ark. 236, 237, 920 S.W.2d 13,14 (1996). By entering a plea of *nolo contendere* or guilty, a defendant waives all non-jurisdictional challenges. O'Leary v. United States, 856 F.2d 1142, 1143 (8th Cir. 1988); United States v. Bahur, 200 F.3d 917, 923 (6th Cir. 2000). Claims foreclosed by a plea include those alleging that the prosecution failed to disclose favorable evidence. Smith v. United States, 876 F.2d 655, 657 (8th Cir. 1989). Where a defendant enters a conditional plea, he waives "all issues 'not expressly reserved for appeal'" in his conditional plea.  United States v. Colin, 314 F.3d 439, 447 (9th Cir. 2002) (quoting United States v. Chon, 210 F.3d 990, 995 (9th Cir. 2000)); United States v. Finnigan, 113 F.3d 1182, 1183 (10th Cir. 1997). In pleading *nolo contendere*, Petitioner did not reserve for appeal any issue other than his right to appeal the circuit court's denial of his motion to suppress. Accordingly, by pleading *nolo contendere* Petitioner waived his claim that the State's failure to disclose evidence amounts to suppression of evidence.  Furthermore, any failure by the State to disclose exculpatory evidence to Petitioner in this case is not a constitutional

violation. <u>See</u> <u>Matthew v. Johnson</u>, 201 F.3d 353, 361-362 (5th Cir. 2000) (a prosecutor's failure to disclose exculpatory evidence to an individual waiving his right to trial by entering a plea is not a constitutional violation). <u>See also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 633 (2002) ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").

THEREFORE, the Magistrate Judge recommends that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed with prejudice.

Dated this 7th day of November, 2006.


_____/s/  John F. Forster, Jr._____
UNITED STATES MAGISTRATE JUDGE